**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

GREGORY GOODWIN and
PLEAS WALDEN, on behalf of
themselves and on behalf of all
others similarly situated,

      Plaintiffs,

v.                              Case No. :

ELWOOD STAFFING SERVICES, INC.

      Defendant.
_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Gregory Goodwin and Pleas Walden (collectively, "Plaintiffs"), on behalf of themselves and the putative class set forth below, bring this Class Action Complaint against Defendant, Elwood Staffing Services, Inc. ("Defendant" or "Elwood"), including, subsidiaries, divisions and affiliates, under the Fair Credit Reporting Act of 1970, as amended ("FCRA"), 15 U.S.C. § 1681 et seq.

## PRELIMINARY STATEMENT

1.     Plaintiffs are consumers/applicants who were the subject of a consumer report used for employment purposes by Defendant, Elwood Staffing Services, Inc.

2.     Defendant routinely obtains and uses information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently relies on such information, in whole or in part, as a basis for adverse employment action, such as denying employment, removal from job assignments, and denying promotions or other job related opportunities.

3.     The FCRA, 15 U.S.C. § 1681b, makes it presumptively unlawful to obtain and use a "consumer report" for an employment purpose.  Such use becomes lawful if and only if the "user" – in this case "Defendant"– has complied with the statute's strict disclosure and authorization requirements. 15 U.S.C. § 1681b(b)(2).

4.     Defendant willfully violated these requirements in multiple ways, in systematic violation of Plaintiffs' rights and the rights of other putative class members.

5.     Defendant violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring consumer reports on Plaintiffs and other putative class members for employment purposes, without first providing a clear and conspicuous disclosure before procuring the report.

6.     Defendant was required to disclose to its applicants and employees – *in a document that consists solely of the disclosure* – that it might obtain a consumer report for employment purposes.  However, Defendant did not make the disclosure in a "stand alone" document consisting solely of the disclosure. *Id*.

7.     Defendant also violated 15 U.S.C. § 1681b(b)(2)(A)(ii) by obtaining consumer reports on Plaintiffs and other putative class members without proper authorization, since it never provided them with a lawful disclosure.

8.     Another key protection the FCRA provides consumers in the employment context is the requirement that employers—*before* using consumer reports to make an adverse employment decision—provide consumers with notice, a copy of their report, and a written summary of their FCRA rights.  Defendant violated 15 U.S.C. § 1681b(b)(3)(A) by taking adverse employment action against Plaintiffs and other putative class members without first providing Plaintiffs and other affected class members notice, a copy of their consumer report, and a summary of their FCRA rights.  Consequently, consumers were deprived of the

opportunity to confirm the accuracy of their report, learn the contents of their report, or dispute their report with Defendant.

9.     In Counts I and II, Plaintiff Goodwin, asserts a FCRA claim under 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) on behalf of a "Background Check Class," consisting of:

> **All consumers in the United States subject of a consumer report obtained by Elwood Staffing Services, Inc. for employment purposes but to whom Elwood Staffing Services, Inc. did not provide a clear and conspicuous disclosure in a document consisting solely of the disclosure.**

10.     In Count III, Plaintiffs assert a FCRA claim under 15 U.S.C. § 1681b(b)(3)(A) on behalf of an "Adverse Action Class," consisting of:

> **All consumers in the United States against whom Elwood Staffing Services, Inc. took adverse employment action based, in whole or in part, on information contained in a consumer report obtained within five years preceding this action through the date of final judgment, who were not first provided notice and a copy of their consumer report.**

11.     On behalf of themselves and the putative classes, Plaintiffs seek statutory damages, costs and attorneys' fees, equitable relief, and other appropriate relief under the FCRA.

## THE PARTIES

12.     Individual and putative representative Plaintiff, Gregory Goodwin ("Goodwin") applied for employment with Defendant and is a member of the putative Background Check Class and Adverse Action Class defined above.

13.     Individual and putative representative Plaintiff, Pleas Walden ("Walden") was employed with Defendant for approximately two years and is a member of the putative Adverse Action Class defined above.

14.     Defendant is a corporation and user of consumer reports as contemplated by the

FCRA, at 15 U.S.C. § 1681b.

## JURISDICTION AND VENUE

15.     This is an action for statutory damages for violations of the Fair Credit Reporting

Act, 15 U.S.C. § 1681 et seq.

16.     The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p.

17.     Venue is proper in the United States District Court, Southern District of Indiana,

Indianapolis Division, because Defendant is headquartered in the Southern District of Indiana.

## ALLEGATIONS REGARDING DEFENDANT'S BUSINESS PRACTICES
### *Background Checks*

18.     Defendant conducts background checks on job applicants as part of a standard

screening process.   In addition, Defendant also conducts background checks on existing

employees from time-to-time during the course of their employment.

19.     Defendant does not perform these background checks in-house.   Rather,

Defendant relies on an outside consumer reporting agency to obtain this information and report it

to Defendant.   These reports constitute "consumer reports" for purposes of the FCRA.

### *FCRA Violations Relating to Background Check Class*

20.     Under the FCRA, it is unlawful to procure a consumer report or cause a

consumer report to be procured for employment purposes, unless:

> (i)      ***a clear and conspicuous disclosure*** has been made in writing to
> the consumer at any time before the report is procured or caused
> to be procured, ***in a document that consists solely of the***
> ***disclosure***, that a consumer report may be obtained for
> employment purposes; and

> (ii)     the consumer has authorized in writing (which authorization may
> be made on the document referred to in clause (i)) the procurement
> of the report by that person**.**

15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) (*emphasis added*).

4

21.     Defendant failed to satisfy these disclosure and authorization requirements.

22.     Defendant did not provide a clear and conspicuous disclosure before procuring consumer reports.  In fact, the purported disclosure was not clear because it contained language that a reasonable person would not understand.  The purported disclosure was not conspicuous because it was obfuscated by unnecessary information.

23.     Defendant did not have a stand-alone FCRA disclosure.  The FCRA requires that a disclosure not contain extraneous information.  This is commonly referred to as the "stand alone disclosure" requirement.   Defendant's purported FCRA disclosure contained extraneous information.

24.     Providing notice to consumers is a critical component of the FCRA, as the FCRA also contains several other notice provisions.[1]

25.     The purpose of FCRA notice provisions, including § 1681b(b)(2)(A)(i), is to put consumers on notice that a consumer report may be prepared.  This gives consumers the opportunity to exercise substantive rights conferred by the FCRA or other statutes, allowing consumers the opportunity to ensure accuracy, confidentiality and fairness in the use of their personal, private information.

26.     Without clear notice that a consumer report is going to be procured, applicants and employees are deprived of the opportunity to make informed decisions or otherwise assert protected rights.

27.     Using a FCRA disclosure that is not "stand alone" violates the plain language of the statute and consumers' federally protected rights.

---

[1] Such provisions include: 15 U.S.C. § 1681b(b)(3)(A) (pre-adverse action); § 1681b(4)(B)(notice of national security investigation); § 1681c(h) (notification of address discrepancy); § 1681g (full file disclosure to consumers); § 1681k(a)(1) (disclosure regarding use of public record information); § 1681h (form and conditions of disclosure; and § 1681m(a) (notice of adverse action).

28.     Defendant knowingly and recklessly disregarded case law and regulatory guidance and willfully violated 15 U.S.C. § 1681b(b)(2)(A) by procuring consumer report information on consumers without complying with the disclosure and authorization requirements of the statute. Defendant's violations were willful because Defendant knew it was required to use a stand-alone disclosure form prior to obtaining and using a consumer report on the putative class members.

29.     Defendant's conduct is also willful because:

    a.     Defendant is a large and sophisticated employer with access to legal advice through its own attorneys and there is no evidence it determined its own conduct was lawful;

    b.     Defendant knew or had reason to know that its conduct was inconsistent with published FCRA guidance interpreting the FCRA, case law and the plain language of the statute; and

    c.     Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

30.     Defendant acted in a deliberate or reckless disregard of its obligations and the rights of Plaintiff Goodwin and other Background Check Class members. Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in promulgations of the FTC and in established case law. Defendant had access to materials and resources advising them of their duties under the FCRA.

### FCRA Violations Relating to Adverse Action Class

31.     The FCRA also provides that "in using a consumer report for employment purposes, *before* taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates . . . a copy of the report[.]" 15 U.S.C. § 1681b(b)(3)(A)(i)(emphasis added).

32.     Defendant typically does not provide consumers with notice, a copy of their consumer report and summary of rights, before taking adverse action against them based on the information in such reports.

33.     Commonly known as the pre-adverse action requirement, 15 U.S.C. § 1681b(b)(3)(A), requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken.  Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action.

34.     By failing to provide Plaintiffs and other putative class members with the information required by 15 U.S.C. § 1681b(b)(3)(A) before taking adverse employment action against them based on the information contained in such reports, Defendant willfully disregarded the plain language of the statute in violation of 15 U.S.C. § 1681b(b)(3)(A).

### *Plaintiff Gregory Goodwin*

35.     Plaintiff Goodwin applied for employment with Defendant on three separate occasions in 2020.

36.     Defendant procured a consumer report on Plaintiff Goodwin.  The consumer report contained personal, private, and sensitive information about Plaintiff Goodwin.

37.     Plaintiff Goodwin attempted to read the disclosure but was distracted from the disclosure by the presence of additional information, including information about inapplicable state laws pertaining to background checks.

38.     Plaintiff Goodwin did not understand a consumer report was being procured on him because Defendant's disclosure was not clear *and* conspicuous.  The disclosure was not

7

clear because it was not easily understandable by a lay person.   The disclosure was not conspicuous because it was obfuscated by a litany of irrelevant information about state laws and areas of inquiry.

39.     Plaintiff Goodwin was confused about the nature and scope of any investigation into his background, if any, since it combined the statutory definitions of "consumer reports" and "investigative consumer reports."

40.     Plaintiff Goodwin was confused about his rights due to the presence of the additional language contained in Defendant's forms.

41.     If he had been provided a clear and conspicuous disclosure, Plaintiff would Goodwin would not have authorized a Defendant to obtain his consumer report.

42.     Plaintiff Goodwin values his privacy rights.   If Plaintiff Goodwin was aware Defendant had presented him with an unlawful FCRA disclosure, Plaintiff Goodwin would not have authorized Defendant to procure a consumer report and dig deep into his personal, private and sensitive information.

43.     Plaintiff Goodwin values his privacy rights.   Plaintiff Goodwin would not have consented to the release of his consumer report to a person to whom he did not specifically authorize to receive his personal, sensitive information.

44.     Plaintiff Goodwin was rejected for employment based in whole or in part on his consumer report.

45.     Defendant did not provide Plaintiff Goodwin with notice or a copy of his consumer report before rejecting him for employment.

46.     Because Plaintiff Goodwin was not provided a copy of his consumer report, he was worried about the contents of his consumer report, whether it was accurate and how it would

impact his future employment prospects.

47.     Plaintiff Goodwin spent time trying to obtain his consumer report and researching whether Defendant had violated his rights.

48.     If Defendant had provided Plaintiff Goodwin with pre-adverse action notice and a copy of his consumer report, Plaintiff Goodwin could have clarified any confusion, addressed any inaccuracies or pled his case to for employment.

49.     If Defendant had provided Plaintiff Goodwin with a copy of his consumer report, Plaintiff Goodwin would have known what was on the report; the consumer reporting agency that released the report; and he would not have spent time trying to obtain a copy of his consumer report, worrying about its contents or researching his rights.

50.     Plaintiff Goodwin ultimately obtained his consumer report through his own efforts, long after Defendant denied him employment.  During such time, Plaintiff Goodwin was deprived of knowing the contents of his consumer report and how to address such information with prospective employers during his search for employment.

***Plaintiff Pleas Walden***

51.     Plaintiff Walden was employed by Defendant for approximately two years. For nearly two years, until February, 2020, Plaintiff was assigned to a Coca Cola facility. Plaintiff was informed Coca Cola intended to hire him full time.

52.     On February 20, 2020, Defendant procured Plaintiff Walden's consumer report for employment purposes.  The consumer report contained Plaintiff Walden's personal, private and sensitive information.

53.     Defendant terminated Plaintiff Walden's employment based in whole or in part on his consumer report.

54.     In January 2021, Plaintiff was employed by Defendant a second time.  This time, Plaintiff was removed from a second assignment (this time at Pace) because of his consumer report.

55.     Defendant did not provide Plaintiff Walden with notice or a copy of his consumer report before terminating his employment in February, 2020 and January, 2021.

56.     Because Defendant did not provide Plaintiff Walden with notice or a copy of his consumer report, he was denied the opportunity to address the contents of his consumer report or plead his case for continued employment at the job he had held at Coke for nearly two years preceding his termination or his subsequent assignment at Pace.

57.     Because Defendant never provided Plaintiff Walden with a copy of his consumer report, he was worried about the contents of his consumer report, whether it was accurate and how it would impact his future employment prospects.

58.     Plaintiff Walden spent time trying to obtain his consumer report and researching whether his rights had been violated.

59.     If Defendant had provided Plaintiff Walden with pre-adverse action notice and a copy of his consumer report, Plaintiff Walden could have clarified any confusion, addressed any inaccuracies or pled his case to continue his employment.

60.     If Defendant had provided Plaintiff Walden with a copy of his consumer report, Plaintiff Walden would have known what was on the report; the consumer reporting agency that released the report; and he would not have spent time trying to obtain a copy of his consumer report, worrying about its contents or researching his rights.

61.     If Defendant had provided Plaintiff Walden with a copy of his consumer report, he would have had the opportunity to explain its contents and plead his case to continue

employment for which he had already demonstrated his proficiency.

62.     Plaintiff Walden obtained his consumer report through his own efforts, long after Defendant denied him employment.   During such time, Plaintiff Goodwin was deprived of knowing the contents of his consumer report and how to address such information with prospective employers.

## CLASS ACTION ALLEGATIONS

63.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure and 15 U.S.C. § 1681b, Plaintiff Goodwin brings this action for himself and on behalf of a "Background Check Class," defined as:

> **All consumers in the United States subject of a consumer report obtained by Elwood Staffing Services, Inc. for employment purposes but to whom Elwood Staffing Services, Inc. did not provide a clear and conspicuous disclosure in a document consisting solely of the disclosure.**

64.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure and 15 U.S.C. § 1681b, Plaintiffs bring this action for themselves and on behalf of an "Adverse Action Class," defined as:

> **All consumers in the United States against whom Elwood Staffing Services, Inc. took adverse employment action based, in whole or in part, on information contained in a consumer report obtained within five years preceding this action through the date of final judgment, who were not first provided notice and a copy of their consumer report.**

65.     <u>Numerosity</u>:   The members of the putative classes are so numerous that joinder of all Class members is impracticable.   Defendant regularly obtains and uses information in  consumer reports to conduct background checks on prospective employees and existing employees, and frequently relies on such information, in whole or in part, in the hiring process.   Plaintiffs are informed and believe that during the relevant time period, thousands of

Defendant's employees and prospective employees satisfy the definition of the putative classes.  Based on the number of putative class members, joinder is impracticable.  The names and addresses of the Class members are identifiable through Defendant's records and published Class members may be notified of this action by mailed notice.

66.   Typicality:   Plaintiffs' claims are typical of those of the members of the putative classes.  Defendant typically uses consumer reports to conduct background checks on employees and prospective employees.   The FCRA violations suffered by Plaintiffs are typical of those suffered by other putative class members, and Defendant treated Plaintiffs consistent with other putative class members in accordance with their standard policies and practices.

67.   Adequacy:   Plaintiffs will fairly and adequately protect the interests of the putative classes, and has retained counsel experienced in complex class action litigation.

68.   Commonality:  Common questions of law and fact exist as to all members of the putative classes, and predominate over any questions solely affecting individual members of the putative classes.  These common questions include, but are not limited to:

  a.  whether Defendant uses consumer report information to conduct background checks on employees and prospective employees;

  b.  whether Defendant's background check practices and/or procedures comply with the FCRA;

  c.  whether Defendant violated the FCRA by procuring consumer report information without making proper disclosures in the format required by the statute;

  d.  whether Defendant violated the FCRA by procuring consumer report information based on invalid authorizations;

  e.  whether Defendant violated the FCRA by taking adverse action against Plaintiff and other members of the Adverse Class based on information in a consumer report, without providing them notice, a copy of their

consumer report, or summary of FCRA rights;

    f.   the proper measure of statutory damages; and

    g.   whether Defendant's conduct was willful.

69.    This case is maintainable as a class action because prosecution of actions by or against individual members of the putative classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for the Defendant. Further, adjudication of each individual Class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a party to such action, thereby impeding their ability to protect their interests.

70.    This case is also maintainable as a class action because Defendant acted or refused to act on grounds that apply generally to the putative classes, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the classes as a whole.

71.    Class certification is also appropriate because questions of law and fact common to the putative classes predominate over any questions affecting only individual members of the putative classes, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct, which is described in this Complaint, stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the putative classes do not have an interest in pursuing separate actions against the Defendant, as the amount of each class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover,

management of this action as a class action will not present any foreseeable difficulties.  In the interests of justice and judicial efficiency, it would be desirable to  concentrate the litigation of all putative class members' claims in a single action, brought in a single forum.

72.     Plaintiffs intend to send notice to all members of the putative classes to the extent required by Federal Rules of Civil Procedure 23.   The names and addresses of the putative class members  are readily available from Defendant's records.

<u>COUNT I</u>
**Failure to Make Proper Disclosure in**
**<u>Violation of FCRA 15  U.S.C. § 1681b(b)(2)(A)(i)</u>**

73.     Plaintiff Goodwin alleges and incorporates by reference the allegations in the preceding paragraphs 35-43.

74.     In violation of the FCRA, the FCRA Disclosure form Defendant required the Background Check Class to complete as a condition of its employment with Defendant does not satisfy the disclosure requirements of 15 U.S.C. § 1681b(b)(2)(A)(i) because Defendant failed to provide a stand-alone document as to the consumer report information being obtained and utilized.

***Plaintiff Goodwin's First Concrete Injury under § 1681b(b)(2)(A)(i): Informational Injury***

75.     Plaintiff Goodwin suffered a concrete informational injury because Defendant failed to provide Plaintiff Goodwin with information to which he was entitled to by statute, namely a stand-alone FCRA disclosure form.  Through the FCRA, Congress created a new right – the right to receive the required disclosure as set out in the FCRA – and a new injury – not receiving a stand-alone disclosure.

76.     Pursuant to § 1681b(b)(2), Plaintiff Goodwin was entitled to receive certain information at a specific time, namely a disclosure that a consumer report may be procured for

employment purposes in a document consisting solely of the disclosure.  Such a disclosure was required to be provided to Plaintiff Goodwin before the consumer report was to be procured.  By depriving Plaintiff Goodwin of this information, in the form and at the time he was entitled to receive it, Defendant injured Plaintiff Goodwin and the putative class members he seeks to represent.

77.     Defendant violated the FCRA by procuring consumer reports on Plaintiff Goodwin and other Background Check Class members without first making proper disclosures in the format required by 15 U.S.C. § 1681b(b)(2)(A)(i).  Namely, these disclosures had to be made: (1) before Defendant actually procured consumer reports, and (2) in a stand-alone document, clearly informing Plaintiff Goodwin and other Background Check Class members that Defendant might procure a consumer report on each of them for purposes of employment.  The required disclosures were not made, causing Plaintiff, Goodwin an informational injury.

78.     Defendant's failure to provide Plaintiff Goodwin and the putative class with a lawful disclosure created a risk of harm that Plaintiff Goodwin and members of the putative class would be confused and distracted by the extraneous language.

***Plaintiff Goodwin's Second Concrete Injury under § 1681b(b)(2)(A)(i): Invasion of Privacy***

79.     Defendant invaded Plaintiff Goodwin's right to privacy.  Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (*i.e.*, disclosure and authorization) set forth in the following subsection, 15 U.S.C. § 1681b(b)(2).  As one court put it, "[t]he FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and receiving the consumer's written authorization."

80.     The FCRA created a statutory cause of action akin to invasions of privacy and

intrusions upon seclusion, harms recognized as providing the basis for lawsuits under English and American law. Defendant invaded Plaintiff Goodwin's privacy and intruded upon Plaintiff Goodwin's seclusion by procuring a consumer report on him and viewing his private and personal information without lawful authorization.

81.     The forgoing violations were willful. At the time Defendant violated 15 U.S.C. § 1681b(b)(2)(A)(i) Defendant knew it was required to provide a stand-alone form prior to obtaining a consumer report on Plaintiff Goodwin and the putative class. Defendant's willful conduct is also reflected by, among other things, the following facts:

   a.      Defendant is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

   b.      Defendant knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

   c.      Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

82.     Plaintiff Goodwin and the Background Check Class are entitled to statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

83.     Plaintiff Goodwin and the Background Check Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff Goodwin, on behalf of himself and the putative class, prays for relief as follows:

   a.      determining that this action may proceed as a class action;

b.      designating Plaintiff Goodwin as a class representative and designating Plaintiff Goodwin's counsel as counsel for the putative class;

c.      issuing proper notice to the putative class at Defendant's expense;

d.      awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

e.      awarding reasonable attorneys' fees and costs as provided by the FCRA.

## COUNT II
### Failure to Obtain Proper Authorization in
### Violation of FCRA 15 U.S.C. § 1681b(b)(2)(A)(ii)

84.      Plaintiff Goodwin alleges and incorporates by reference the allegations in the preceding paragraphs 35-43.

85.      Defendant violated the FCRA by procuring consumer reports relating to Plaintiff Goodwin and other Background Check Class members without proper authorization.

86.      The authorization requirement under 15 U.S.C. § 1681b(b)(2)(A)(ii) follows the disclosure requirement of § 1681b(b)(2)(A)(i) and presupposes that the authorization is based upon a valid disclosure.

*Plaintiff Goodwin's First Concrete Injury under § 1681b(b)(2)(A)(ii): Informational Injury*

87.      Plaintiff Goodwin suffered a concrete informational injury because Defendant failed to provide Plaintiff Goodwin with information to which he was entitled to by statute. Thus, through the FCRA, Congress has created a new right—the right to control the dissemination of personal, sensitive information—and a new injury—unauthorized access of a consumer's personal, sensitive information by a prospective employer.

88.      Pursuant to § 1681b(b)(2), Plaintiff Goodwin was entitled to receive certain information at a specific time, namely a disclosure that a consumer report may be procured for employment purposes in a document consisting solely of the disclosure. Such a disclosure was

required to be provided to Plaintiff Goodwin before the consumer report was to be procured.  By depriving Plaintiff Goodwin of this information, Defendant injured Plaintiff Goodwin and the putative class members he seeks to represent.

89.     Defendant violated the FCRA by procuring consumer reports on Plaintiff Goodwin and other Background Check Class members without first making proper disclosures in the format required by 15 U.S.C. § 1681b(b)(2)(A)(i) or obtaining their lawful authorization to procure their report.  Namely, these disclosures had to be made: (1) before Defendant actually procured consumer reports, and (2) in a stand-alone document, clearly informing Plaintiff Goodwin and other Background Check Class members that Defendant might procure a consumer report on each of them for purposes of employment.

90.     Plaintiff Goodwin suffered an informational injury.  Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (i.e., disclosure and authorization) set forth in the following subsections: 15 U.S.C. § 1681b(b)(2). The FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and receiving the consumer's written authorization.

***Plaintiff Goodwin's Second Concrete Injury under § 1681b(b)(2)(A)(ii): Invasion of Privacy***

91.     Additionally, Defendant invaded Plaintiff Goodwin's right to privacy and intruded upon his seclusion.  Plaintiff Goodwin's consumer report contained a wealth of private information which Defendant had no right to access absent a specific Congressional license to do so.  Defendant invaded Plaintiff Goodwin's privacy and intruded upon Plaintiff Goodwin's seclusion by procuring his consumer report and viewing his private and personal information without lawful authorization.

92.     The foregoing violations were willful.  At this time Defendant violated 15 U.S.C. § 1681b(b)(2)(A)(ii).  Defendant knew that to have lawful authorization to obtain a consumer report on Plaintiff Goodwin, it was required to provide a lawful disclosure before obtaining his report.  A plethora of authority, including both case law, and FTC opinions, existed at the time of Defendant's violations on this very issue that held waivers cannot be included in the FCRA forms at issue.  Defendant's willful conduct is also reflected by, among other things, the following facts:

     a.    Defendant is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

     b.    Defendant knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

     c.    Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

93.     Plaintiff Goodwin and the Background Check Class are entitled to statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

94.     Plaintiff Goodwin and the Background Check Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE,  Plaintiff Goodwin, on behalf of himself and the putative class, prays for relief as follows:

     a.    determining that this action may proceed as a class action;

     b.    designating Plaintiff Goodwin as a class representative and designating Plaintiff Goodwin's counsel as counsel for the putative class;

c.   issuing proper notice to the putative class at Defendant's expense;

d.   awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class;

e.   injunctive and declaratory relief; and

f.   awarding reasonable attorneys' fees and costs as provided by the FCRA.

**COUNT III**
**Failure to Provide Adverse Action Notice**
**in Violation of FCRA 15 U.S.C. § 1681b(b)(3)(A)**

95.   Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs 44-50 and 51-62.

96.   Defendant used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiffs and other members of the Adverse Action Class.

97.   Defendant violated the FCRA by failing to provide Plaintiffs and other Adverse Action Class members with pre-adverse action notice, a summary of FCRA rights and a copy of their consumer report used to take adverse employment action against them, before taking such adverse action. *See* 15 U.S.C. § 1681b(b)(3)(A).

98.   The foregoing violations were willful.  Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiffs and other Adverse Action Class members under 15 U.S.C. § 1681b(b)(3)(A).  Defendant knew or should have known of its legal obligations under the FCRA.  These obligations are well established in the plain language of the statute and published circuit court authority.  Defendant obtained or otherwise had available substantial written materials that apprised Defendant of its duties under the FCRA.  Any reasonable employer knows of the existence of these FCRA mandates, or can easily discover their substance.

99.     Moreover, at the time Defendant failed to follow 15 U.S.C. § 1681b(b)(3)(A) a plethora of FTC opinions and case law existed.

### *Plaintiffs' First Concrete Injury: Informational Injury*

100.     Plaintiffs suffered a concrete informational injury because Defendant failed to provide Plaintiffs with information to which they were entitled to by statute, namely pre-adverse notice, before adverse action was taken.   This notice should have included all information prescribed by § 1681b(b)(3)(A), including: (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under § 1681g(c)(3) of the FCRA.

101.     Through the FCRA, Congress has created a new right—the right to receive pre-adverse notice as set out in the FCRA—and a new injury—not receiving said notice.   The Plaintiffs' "inability to obtain [that] information" is therefore, standing alone, "a sufficient injury in fact to satisfy Article III." *Spokeo Inc. v. Robins,* 136 S. Ct. 1540, 1549 (2016).

### *Plaintiffs' Second Concrete Injury: Inability to* *Learn of the Contents of Their Report and Tell Their Side of the Story*

102.     Defendant's failure to provide timely notice deprived Plaintiffs and Class Members of the opportunity to learn about the information in their consumer report and tell Defendant their side of the story before Defendant took adverse action.   Thus, Plaintiffs were denied the opportunity to know the consumer reporting agency that furnished the consumer report; to know if their report was accurate; to plead their case for employment; to understand how their consumer report might affect their efforts to obtain employment elsewhere; and to be prepared to address their consumer report information with prospective employers in the future.

103.     With these two recognized injuries directly traceable to Defendant's failure to timely provide the notices required by § 1681b(b)(3), Plaintiffs unquestionably have established

Article III standing.

104.    Plaintiffs and the Adverse Action Class are entitled to statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages as the Court may allow under 15 U.S.C. § 1681n(a)(2).

105.    Plaintiffs and the Adverse Action Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiffs, on behalf of themselves and the putative class, prays for relief as follows:

    a.    determining that this action may proceed as a class action;

    b.    designating Plaintiffs as class representatives and designating Plaintiffs' counsel as counsel for the putative classes;

    c.    issuing proper notice to the putative classes at Defendant's expense;

    d.    awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

    e.    awarding reasonable attorneys' fees and costs as provided by the FCRA.

## DEMAND FOR JURY TRIAL

Plaintiffs and the putative classes demand a trial by jury.

Dated this 5th day of February, 2021.

                Respectfully submitted,

                *s/ J. Corey Asay*
                J. Corey Asay
                Morgan & Morgan, P.A.
                333 W. Vine Street, Suite 1200
                Lexington, KY  40507
                Tel: (859) 286-8368
                Fax: (859) 286-8384
                E-mail: CAsay@forthepeople.com

**MARC R. EDELMAN, ESQ.**
(*Pro Hac Vice forthcoming*)
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone 813-223-5505
Fax:  813-257-0572
MEdelman@forthepeople.com

*Attorneys for Plaintiff*